UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN ANDREW BLACKSMITH,<br><br>Defendant. | 5:17-CR-50101-JLV<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion to Suppress Evidence (Doc. 17). A hearing was held on Wednesday, February 14, 2018. Defendant was personally present and represented by his attorney of record, Gregory Strommen. The Government was represented by Assistant United States Attorney Eric Kelderman. Three witnesses testified at the hearing. Nine exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## **RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Suppress Evidence be denied.

**JURISDICTION**

Defendant is charged in an Indictment with Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and (C); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated March 9, 2015.

**FACTUAL BACKGROUND**

Oglala Sioux Tribe Department of Public Safety ("OSTDPS") Officers Ronald Red Owl and Nicholas Campbell arrested Defendant Jonathan Blacksmith on February 17, 2017, pursuant to outstanding federal and tribal warrants. At the February 14, 2018, evidentiary hearing, Officers Red Owl and Campbell described the events surrounding Mr. Blacksmith's arrest. The court finds their testimony credible.

On February 17, 2017, Officer Ronald Red Owl was on routine patrol in the Kyle, South Dakota area. Earlier that day, Officer Red Owl received an email from the Bureau of Indian Affairs Drug Task Force with information about potential drug activity on the Pine Ridge Indian Reservation. (FTR 9:05–9:06).[1] OSTDPS officers frequently received such emails regarding criminal

---

[1] No transcript was prepared. Rather, all citations to the testimony presented at the evidentiary hearing are to the For The Record ("FTR") audio recording, Rapid City Courtroom 2, February 14, 2018, beginning at 9:00 a.m.

2

activity in the area. (FTR 10:23). The email, addressed to OSTDPS, stated that Defendant Jonathan Blacksmith was suspected of bringing drugs into the reservation, was possibly armed and dangerous, and had a federal warrant as well as tribal warrants. (FTR 9:07–08). The email also described the silver Pontiac Grand Prix Mr. Blacksmith was driving, a provided a plate number, and stated the car was registered to Aaliyah Two Bulls in Rapid City, South Dakota. (FTR 9:07). The email also contained a photograph of Mr. Blacksmith's face. (FTR 9:10–11). The photograph showed Mr. Blacksmith's distinctive facial tattoos. (FTR 9:11).

Around 5:20 p.m. that day, Officer Red Owl spotted a silver Grand Prix matching the description of Mr. Blacksmith's vehicle, with a single male occupant. (FTR 9:08–09). Officer Red Owl followed the vehicle and ran the plate number, which returned a positive match to the vehicle described in the Drug Task Force email. Dispatch also confirmed that Mr. Blacksmith had two outstanding tribal bench warrants, and one outstanding federal warrant. (FTR 10:25). At that point, Officer Red Owl contacted OSTDPS Lieutenant Nicholas Campbell and informed him he saw the vehicle described in the email. (FTR 9:09). The officers met up at the college center in Kyle, across the street from the Angel's convenience store where Mr. Blacksmith had parked the Grand Prix. (FTR 10:23).

For about five to ten minutes, Officers Red Owl and Campbell remained across the street and monitored the Grand Prix for suspicious activity. (FTR 9:10, 10:25). The officers observed the driver turn the car lights on and off

twice in a row. (FTR 9:11). The officers then approached the vehicle, and recognized the occupant as Mr. Blacksmith, given his distinctive facial tattoos. (FTR 10:31).

Officer Campbell made contact with Mr. Blacksmith at the driver's side door, while Officer Red Owl approached the passenger door. (FTR 10:32). Officer Campbell asked for Mr. Blacksmith's name, and he responded "Nate" or "Nathaniel" Blacksmith. (FTR 9:13). Officer Campbell asked Mr. Blacksmith to step out of the vehicle, and proceeded to handcuff Mr. Blacksmith. (FTR 10:31). Mr. Blacksmith then identified himself by his correct name, and Officer Campbell informed him he was under arrest for his active warrants. (FTR 10:32). Officer Campbell searched Mr. Blacksmith's person after placing him under arrest. (FTR 10:35). Law enforcement ran the license plates and determined it was registered to Aaliyah Two Bulls.

The government introduced into evidence the OSTDPS protocol on towing and inventorying vehicles. (Ex. 3). When the driver of a car parked in a public place is arrested, and no passengers are present who can legally remove the vehicle with the driver's consent, OSTDPS protocol dictates conducting an inventory search and then towing the car. (FTR 9:16, 10:33; Ex. 3). Specifically, the policy provides:

> A vehicle may be towed under the following conditions: . . . When the driver of the vehicle is removed from the vehicle by arrest or detention, and no passengers are present who can legally remove the vehicle with the driver's consent.

Ex. 3, Section 29.03(C)(G).

Mr. Blacksmith's car was parked in a public location, and no passengers were available to drive the vehicle away, so the officers followed OSTDPS protocol, conducted an inventory search, and towed the vehicle. (FTR 10:40–41). During the inventory search, Officer Campbell found two firearms, a white crystal-like substance in a bag in the backseat, an eyeglasses case containing a glass pipe, and baggies of marijuana and a crystal-like substance. (FTR 10:41). Bureau of Indian Affairs Special Agent ("SA") Justin Hooper also assisted in the inventory search. (Ex. 108; FTR 10:55–58). Officer Red Owl then took the vehicle to the police station, from where it was towed and impounded. (FTR 10:42). SA Hooper completed an evidence inventory and receipt log at approximately 7:30 p.m. that evening. (Ex. 4).

## DISCUSSION

Mr. Blacksmith argues that law enforcement illegally obtained evidence from his vehicle because the search following his arrest violated the Fourth Amendment. Mr. Blacksmith does not dispute the validity of his arrest. Rather, Mr. Blacksmith categorizes the vehicle search as a search incident to arrest, and argues that law enforcement violated Arizona v. Gant, 556 U.S. 332 (2009). (Doc. 18 at p. 3). The government responds that law enforcement conducted a valid inventory search. The government also asserts the vehicle search falls within other exceptions and therefore was valid. Given the court's holding as discussed *infra*, those exceptions need not be addressed.

The "cardinal principle" in Fourth Amendment search and seizure jurisprudence is that "searches conducted outside the judicial process, without

5

prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted)).  When the government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing that an exception to the warrant requirement applies.  Mincey, 437 U.S. at 391 (citing Vale v. Louisiana, 399 U.S. 30, 34 (1970)).

Inventory searches are one of the "well-defined exceptions" to the Fourth Amendment's warrant requirement.  Colorado v. Bertine, 479 U.S. 367, 371 (1987).  This exception "permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search."  United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011).  The routine practice of securing and inventorying a vehicle's contents is a "response to three distinct needs: the protection of the [vehicle] owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger."  South Dakota v. Opperman, 428 U.S. 364, 369 (1976).

"The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable."  United States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005).  Inventory searches that are "conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are

reasonable." Id. Standardized police procedures are necessary to "ensure that the search is not merely a ruse for general rummaging in order to discover incriminating evidence." Id. (internal quotations and citation omitted). The officer's subjective intent is irrelevant: "[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." United States v. Marshall, 986 F.2d 1171, 1175–76 (8th Cir. 1993); see United States v. Porter, 859 F.2d 83, 85 (8th Cir. 1988) (per curiam) ("[A]n officer's suspicion that evidence may be present does not invalidate an otherwise lawful inventory search.").

    This case is analogous to United States v. Garreau, 658 F.3d 854 (8th Cir. 2011). There, law enforcement received a tip that the defendant was travelling from Eagle Butte, South Dakota, to Pierre, South Dakota, with a stolen firearm in his vehicle. Id. at 855. The tip described the vehicle. Id. Shortly thereafter, an officer observed the vehicle and pulled it over for a traffic violation. Id. at 856. After running defendant's driver's license, the officer determined defendant had an active state warrant, arrested him, and placed him in the patrol car. Id. Because no one was available to pick up defendant's vehicle, the officer arranged for the car to be towed, conducted an inventory search pursuant to department policy, and discovered the stolen firearm hidden in the trunk. Id. Because the officer complied with policy by conducting the inventory search, the Eighth Circuit affirmed the district court's denial of defendant's motion to suppress the evidence. Id. at 857.

7

Here, likewise, Officers Red Owl and Campbell lawfully took Mr. Blacksmith into custody based on his outstanding federal and tribal warrants.  The vehicle was left in the parking lot of the Angel's store, which is a public location.  No passengers were immediately available to remove the vehicle.  Mr. Blacksmith appears to argue that he should have been allowed to contact someone to come get the vehicle, or alternatively that the vehicle should have been left because it was not parked illegally and did not present a safety hazard.  Law enforcement was under no obligation to accommodate Mr. Blacksmith in this fashion.  Instead, law enforcement complied with OSTDPS protocol by conducting an inventory search and towing the car to the department's impound lot.  Because officers lawfully arrested Mr. Blacksmith and then complied with standard department protocol by inventorying and towing the vehicle, the search was reasonable.  Garreau, 658 F.3d at 857; Kennedy, 427 F.3d at 1143.  The government has met its burden of showing an exception to the Fourth Amendment's warrant requirement.  Mincey, 437 U.S. at 391.  Because the court finds the search was a lawful inventory search, it need not address the government's arguments that the search was a valid consent search or a valid automobile exception search.

## **CONCLUSION**

No constitutional violation occurred because law enforcement conducted a valid inventory search.  Accordingly, it is respectfully recommended that the Motion to Suppress Evidence be denied.

## **NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 10th day of April, 2018.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge