UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN ANDREW BLACKSMITH,<br><br>Defendant. | CR. 17-50101-JLV<br><br>ORDER |

**INTRODUCTION**

A grand jury indicted Jonathan Blacksmith for count I, possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); count II, possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); count III, possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); count IV, possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and count V, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Docket 1). Mr. Blacksmith filed a motion to suppress all evidence seized by law enforcement from "the search of his person and the vehicle he was driving on February 17, 2017 . . . ." (Docket 17).

The motion to suppress was referred to United States Magistrate Judge Daneta Wollmann pursuant to 28 U.S.C. § 636(b)(1)(B) and the standing order of March 9, 2015. An evidentiary hearing was held on February 14, 2018.

(Dockets 28 & 31). Magistrate Judge Wollmann issued a report and recommendation ("R&R") on defendant's motion to suppress. (Docket 30). The magistrate judge recommended defendant's motion to suppress physical evidence be denied. Id. at p. 8. The defendant timely filed his objections to the report and recommendation. (Docket 34).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. See also Fed. R. Crim. P. 59(b)(3).

The court completed a *de novo* review of those portions of the R&R to which objections were filed. For the reasons stated below, the court finds the report and recommendation is an appropriate application of the law to the facts presented by the parties at the suppression hearing. For the reasons stated below, the defendant's objections are overruled and the report and recommendation is adopted consistent with this order.

**OBJECTIONS**

Defendant objects to the facts and the conclusions reached by the magistrate judge as follows:

1. Defendant objects to the finding that the search was a proper inventory search because it was not conducted pursuant to an established procedure for inventory search.

2. Defendant objects to the finding that Officer Red Owl was informed that the owner of the silver vehicle was Leah Two Bulls.

3. Defendant objects to the [R&R's] omission of the fact that while Blacksmith was being arrested, he "worried about his vehicle being left in the parking lot and was asking for phone calls to have somebody come and get his vehicle."

4. Defendant objects to the [R&R's] finding that the Government "introduced into evidence the [Oglala Sioux Tribe Department of Public Safety] OSTDPS protocol on towing and inventorying vehicles."

5. Defendant objects to the [R&R] which states that when "[t]he driver of a car parked in a public place is arrested, and no passengers are present who can easily remove the vehicle with the driver's consent, OSTDPS protocol dictates conducting an inventory search and then towing the car."

6. Defendant objects to the [R&R] referring to the OSTDPS policy, Exhibit 3, as stating protocol for conducting an inventory search.

7. Defendant objects to [the R&R] in general relying upon Exhibit 3 to validate an inventory search.

8. Defendant objects to the [R&R] finding that the search was proper as [an] inventory search.

9. Defendant objects to the [R&R] finding that the search of the vehicle was conducted according to standardized police procedure [because the finding is] clearly erroneous . . . .

10. Defendant objects to the [R&R] finding that the case is analogous to United States v. Garreau[1]. . . .

---

[1] 658 F.3d 854 (8th Cir. 2011).

11. Defendant objects to the [R&R] [findings] that Officer Red Owl was credible and had probable cause to search the vehicle . . . .

(Docket 34 at pp. 1-3). Mr. Blacksmith "requests a de novo determination of the objections" and asks the court to "enter an Order Granting the Motion to Suppress." Id. at p. 4.

Each of defendant's objections will be separately addressed in categories which make sense in the court's analysis.

## ANALYSIS

The magistrate judge determined law enforcement conducted a valid inventory search of the vehicle defendant was driving when he was arrested. (Docket 30 at p. 8). Mr. Blacksmith does not challenge his arrest. (Docket 34). Defendant challenges the decision of the OSTDPS officers to take custody of his vehicle and conduct an inventory search. (Docket 34).

On February 17, 2017, OSTDPS law enforcement officers Ronald Red Owl and Nicholas Campbell arrested Mr. Blacksmith on outstanding federal and tribal warrants. (Docket 30 at p. 2). The background for the arrest was developed at the suppression hearing. Id. at pp. 2-4.

On the date of Mr. Blacksmith's arrest, Officer Red Owl had been a patrol officer with the OSTDPS for 14 years.[2] (Docket 31 at p. 5:6-18). Before

---

[2]At the time of the issuance of the R&R a transcript of the suppression hearing had not yet been prepared. Compare Docket 30 at p. 2 n.1 (the magistrate judge relied on the For the Record ("FTR") audio recording) and Docket 31. The court will cite to the R&R and the transcript (Docket 31) where appropriate.

4

beginning his patrol duties in the Kyle, South Dakota, area on the late afternoon of February 17, 2017, Officer Red Owl reviewed an e-mail from the Bureau of Indian Affairs drug task force. Id. at p. 6:20-25. The e-mail advised the OSTDPS Mr. Blacksmith was suspected of bringing drugs into the Pine Ridge Reservation and he may be armed and dangerous. Id. at p. 8:13-15. The e-mail indicated there were outstanding federal and tribal warrants for his arrest. Id. at p. 8:18-22. The e-mail included a photograph of Mr. Blacksmith's face, including his distinctive facial tattoos. Id. at pp. 11:25-12. The e-mail included a description of a silver Pontiac Grand Prix belonging to Leah Two Bulls[3] of Rapid City, South Dakota, and a license plate number. Id. at pp. 8:1-6 and 16:16-17.

While on patrol that afternoon, Officer Red Owl spotted a silver Grand Prix matching the description given in the e-mail. Id. at p. 10:1-5. While following the vehicle, Officer Red Owl ran a license plate check which returned a positive match to the vehicle described in the e-mail. Id. at p. 10:10-12. Dispatch advised Officer Red Owl that Mr. Blacksmith had two tribal warrants. Id. at pp. 10:13-18 and 37:2-5; see also id. at p. 67:18-21 (dispatch also notified Officer Red Owl and Lieutenant Nicholas Campbell of the existence of a

---

[3]The R&R identified the owner as "Aaliyah Two Bulls," but Officer Red Owl's report and the transcript of the suppression hearing identified the owner as "Leah Two Bulls." See Docket 30 at p. 3 to Exhibit 103 at p. 2 and Docket 31 at pp. 16-17.

5

federal warrant). The Grand Prix was being driven by a man and no other occupants were observed. Id. at p. 11:21-22.

Mr. Blacksmith parked the vehicle in the public parking lot at Angel's convenience store.[4] Id. at pp. 11:11-12; 12:11-14; 84:7-15 and 85:14-19. Officer Red Owl contacted Lieutenant Campbell and reported that his observations of the vehicle matched the information in the e-mail. Id. at p. 10:19-24.

The officers met at the college center across the street from Angel's. Id. at p. 33:5-7; see also Exhibit 103 at p. 2. They monitored the Grand Prix for five to ten minutes. Id. at pp. 11:23-24 and 67:22-24. During that time period, the officers observed the driver of the Grand Prix turn the lights on and off twice in a row. Id. at p. 12:13-14.

Lieutenant Campbell approached the vehicle on the driver's side while Officer Red Owl approached on the passenger door side. Id. at pp. 13:25-14:3. As the officers approached the vehicle they identified the driver as Mr. Blacksmith. Id. at pp. 15-21. Lieutenant Campbell had seen the e-mail photograph and recognized Mr. Blacksmith because of the distinctive tattoos on his face. Id. at pp. 71:24-72:6.

---

[4]Mr. Blacksmith pulled his vehicle into Angel's parking lot at 5:24 p.m. (Docket 31 at pp. 32:21-33:12; see also Exhibit 109 at p. 1).

6

Officer Red Owl heard Lieutenant Campbell ask the driver for his name, to which the driver responded "Nate, Nathaniel Blacksmith." Id. at p. 14:15-16. Lieutenant Campbell asked Mr. Blacksmith to step out of the car, at which time he was handcuffed. Id. at p. 14:16-21. After the Lieutenant asked if that was his name, the driver identified himself as "Jon Blacksmith." Id. at pp. 14:23-15:7. Mr. Blacksmith was arrested on the outstanding warrants. Id. at pp. 15:25-16:2 and 73:2-18.

At that point, Mr. Blacksmith was trying to use his cellphone to find somebody to come get the vehicle. Id. at p. 75:4-5. Lieutenant Campbell told him to put the phone down. Id. at p. 75:5-6. Officer Red Owl did not know who Mr. Blacksmith wanted to call about the vehicle. Id. at p. 48:12-22.

Officer Red Owl reached into the passenger compartment, turned off the vehicle, took the keys and placed them on the roof of the vehicle. Id. at p. 18:4-6 & 18:24-25. While reaching into the vehicle Officer Red Owl smelled a strong odor of alcohol. Id. at p. 18:20-23. The officer observed in plain view an unopened beer can on the floorboard of the backseat. Id. at p. 19:13-16. It is a violation of tribal law to possess an alcoholic beverage on the reservation. Id. at p. 20:14-16.

Officer Red Owl testified that when a vehicle is stopped with a sole occupant who is arrested and there is no one to whom law enforcement can release the vehicle, the policy is to have the vehicle inventoried and towed. (Docket 31 at p. 17:8-24). Lieutenant Campbell indicated the first part of

implementation of the towing policy was to do an inventory of the vehicle. Id. at p. 75:7-13.

Lieutenant Campbell testified to the existing OSTDPS policy for completing an inventory and the towing of an unattended vehicle. Id. at p. 78:23-79-24; see also Exhibit 3. Lieutenant Campbell indicated it was the department's policy to not leave a vehicle in a business parking lot when an arrest is made under these circumstances. (Docket 31 at pp. 88:17-89:10).

Because the vehicle was going to be towed pursuant to OSTDPS policy, the officers began an inventory at the scene. Id. at p. 22:22-23:6. Officer Red Owl understood the tribal policy was in place "[j]ust in case we get accused of stealing or taking things that are in there of value, like money or personal property." Id. at p. 23:7-11; see also id. at p. 47:14-19. Officer Red Owl, Lieutenant Campbell and two other officers conducted the inventory of the vehicle. Id. at p. 26:10-21. BIA Special Agent Justin Hooper prepared the inventory as the other officers removed items from the vehicle. Id. at pp. 3:9-11; 26:24-27:4; and 61:9-12; see also Exhibit 4.

After completion of the inventory, Officer Red Owl drove the vehicle from the scene to the Kyle Police Department so it could be towed to the police headquarters in Pine Ridge, South Dakota.[5] Id. at p. 51:6-17. When they

---

[5]Pine Ridge is approximately 50 miles from Kyle. (Docket 31 at p. 90:15-16).

arrived at the Kyle Police Department, Officer Red Owl signed off on the inventory at 11:30 p.m. Id. at pp. 60:11-61:1; see also Exhibit 4.

The magistrate judge admitted the OSTDPS policy for towing and inventorying vehicles as an exhibit during the suppression hearing. See Exhibit 3; see also Docket 34-1. Relevant to this case, the policy manual contains the following language:

> A vehicle may be towed under the following conditions:
> . . .
>> When the driver of the vehicle is removed from the vehicle by arrest or detention, and no passengers are present who can legally remove the vehicle with the driver's consent. . . .

(Docket 34-1 at pp. 1-2) (OSTDPS manual 29.03(C)(G)) (bold omitted). The policy contains an inventory provision: "All officers shall do an inventory of all vehicles and their contents before releasing the vehicle to the towing company." Id. at p. 1 (OSTDPS manual 29.01(I)). Both OSTDPS law enforcement officers testified this portion of the manual required them to inventory the vehicle before releasing it to the towing company.[6] (Docket 31 at pp. 27:7-28:10; 54:13-55:10; 79:17-80:1; and 88:17-89:10).

"It is well-settled law that a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to

---

[6] The government mistakenly identified section 29.01(I) as section 29.02(I). (Docket 31 at p. 54:16-17). This mistake does not affect the outcome of the court's analysis as Lieutenant Campbell was clearly reviewing the appropriate portion of Exhibit 3.

9

secure and protect vehicles and their contents within police custody." United States v. Perez-Trevino, 891 F.3d 359, 366 (8th Cir. 2018) (internal quotation marks omitted). "The search 'must comply with standardized police procedures.'" Id. (quoting United States v. Williams, 777 F.3d 1013, 1015 (8th Cir. 2015)) (other internal quotation marks omitted). "The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." Id. (internal quotation marks omitted). In other words, "[t]he presence of an investigative motive does not invalidate an otherwise valid inventory search." United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999). "An inventory search 'must be reasonable in light of the totality of the circumstances.'" United States v. Ball, 804 F.3d 1238, 1241 (8th Cir. 2015) (quoting United States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005)).

Mr. Blacksmith's first objection challenges the validity of the inventory "because it was not conducted pursuant to an established procedure for inventory search." (Docket 34 ¶ 1). He claims "[t]he search was not performed pursuant to OSTDPS policy because the vehicle was not towed but driven to the police department by an officer." Id.

Defendant's first objection is without merit. OSTDPS policy identified above clearly requires the officers to complete an inventory of the vehicle before having it towed. (Docket 34-1 at p. 1). The fact that Officer Red Owl drove the vehicle the few blocks from Angel's to the Kyle police office after the

10

inventory search was completed does not invalidate the inventory. The vehicle was ultimately towed from Kyle to Pine Ridge as contemplated by the OSTDPS manual. Defendant's first objection is overruled.

Several of Mr. Blacksmith's other objections are closely tied to his first challenge. The fourth objection is to the R&R "finding that the Government 'introduced into evidence the OSTDPS protocol on towing and inventorying vehicles. (EX.3).' " (Docket 34 ¶ 4). Mr. Blacksmith asserts the exhibit "does not refer to a procedure or protocol for 'inventorying' vehicles." Id. Defendant's fifth objection is premised on his claim "[t]he Government produced no evidence of a standard published procedure of OSTDPS for inventorying vehicles." Id. ¶ 5. Mr. Blacksmith's sixth challenge objects to the R&R's reference to "Exhibit 3, Section 29.3(C)(G)" for "stating protocol for conducting an inventory search." Id. ¶ 6. Defendant's seventh challenge objects to the R&R "in general relying upon Exhibit 3 to validate an inventory search." Id. ¶ 7. He asserts "Exhibit 3 refers only to procedure for 'towing' of vehicles, not for inventory." Id. Mr. Blacksmith's ninth challenge asserts the R&R's "finding that the search . . . was conducted according to standardized police procedures is clearly erroneous, because Exhibit 3 makes no mention of procedure for inventory searches." Id. ¶ 9.

As stated above, the OSTDPS policy requires a law enforcement officer to complete an inventory of the vehicle before having it towed. (Docket 34-1 at p. 1). While the OSTDPS manual does not identify a specific procedure or

11

process for conducting an inventory search, the manual's mandate that officers must complete an inventory of a vehicle before permitting it to be towed satisfies the requirement of Perez-Trevino, 891 F.3d at 366, that "[t]he search 'must comply with standardized police procedures.' " Consistent with Section 29.01(I), law enforcement completed a thorough written vehicle inventory. See Exhibit 4. Defendant does not present any argument or cite any legal authority that something more specific than what occurred in this case is required to comply with the directive of Perez-Trevino. Defendant's fourth, fifth, sixth, seventh and ninth objections are overruled.

Mr. Blacksmith's second objection challenges the R&R's finding the vehicle was owned by Leah Two Bulls. (Docket 34 ¶ 2). Defendant claims Officer "Red Owl had no information that the vehicle was owned by anyone other than Blacksmith." Id.

Defendant's second objection fails. The testimony disclosed that the e-mail bulletin received from the drug task force indicated "the car was registered to [Leah] Two Bulls in Rapid City." (Docket 30 at p. 3). The law enforcement bulletin provided Officer Red Owl with information regarding the probable owner of the Grand Prix. When Officer Red Owl encountered the silver Grand Prix later that day the license plate number matched, as did the description of the driver. Officer Red Owl was entitled to rely on the e-mail bulletin during his encounter with Mr. Blacksmith later that afternoon. Doran v. Eckold, 409 F.3d 958, 965 (8th Cir. 2005) (it is a "settled principle that law

12

enforcement officers may rely on information provided by others in the law enforcement community, so long as the reliance is reasonable."). Defendant's second objection is overruled.

Mr. Blacksmith's third objection is the R&R failed to acknowledge when "being arrested, he 'was worried about his vehicle being left in the parking lot and was asking for phone calls to have somebody come and get his vehicle.'" (Docket 34 ¶ 3) (referencing Docket 31 at p. 16:2-9). As indicated earlier in this analysis, Officer Red Owl acknowledged Mr. Blacksmith's concerns. See Docket 31 at p. 16:2-9. Officer Red Owl testified he did not know who Mr. Blacksmith wanted to call about the vehicle. Id. at p. 48:12-22. Lieutenant Campbell testified that as Mr. Blacksmith exited the vehicle and during the course of the arrest he was trying to make a call to find someone to come get the vehicle. Id. at p. 75:4-5. Mr. Blacksmith was told to put the phone down. Id. at p. 75:5-6.

While Mr. Blacksmith does not specifically tie this testimony or his third objection to the OSTDPS manual, it appears he is suggesting the officers failed to consider an exception to towing contemplated by the manual. Section 29.04 directs that towing a vehicle should not occur under certain circumstances. The section states:

> Except in cases of driving under the influence, or case[s] where a vehicle is or contains evidence of a crime, officers should make every effort to use an alternative to towing. Alternatives such as having a spouse, relative or friend respond within a reasonable time and take custody of the vehicle . . . should be considered whenever

13

> possible. Under no circumstances will a vehicle be secured and left at the scene if it poses a safety hazard.

(Docket 34-1 at p. 2).

The only information known to Officer Red Owl and Lieutenant Campbell was the vehicle belonged to Leah Two Bulls of Rapid City, South Dakota. The court takes judicial notice of the fact Kyle is approximately 90 miles and 1.5 hours from Rapid City. It is not reasonable under the OSTDPS policy, nor would the court expect law enforcement to require Mr. Blacksmith to disclose whether he knew Ms. Two Bulls, or had her cellphone number and then wait for an extended period of time for her or someone else to travel to Kyle to take possession of the vehicle. The officers' decision to inventory and tow the vehicle complied with OSTDPS policy. Defendant's third objection is overruled.

Mr. Blacksmith objects to the R&R's "finding that the search was proper as a[n] inventory search." (Docket 34 ¶ 8). He acknowledges that under Garreau, 658 F.3d at 857, "the rationale for the exception to the warrant requirement" includes three factors: (1) "protection of the vehicle owner's property while it remains in police custody"; (2) "the protection of the police against claims or disputes over lost or stolen property"; and (3) "the protection of the police from potential danger . . . ." Id. (referencing South Dakota v. Opperman, 428 U.S. 364, 369 (1976)). He argues those factors "were not present under the facts of this case" because Officer "Red Owl testified the

14

purpose of the inventory is 'in case we get accused of stealing.' " Id. (citing Docket 31 at p. 23:9-11).

Mr. Blacksmith fails to articulate how an officer's inability to recite the three purposes identified by Opperman for an inventory search in some manner diminishes the rationale behind a lawful inventory search. There is no evidence or any reasonable inference from the evidence that either officer used the inventory search as "merely a ruse for general rummaging in order to discover incriminating evidence." United States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005) (internal citation and quotation marks omitted). Defendant's eighth objection is overruled.

Mr. Blacksmith's tenth objection is to the R&R's "finding that the case is analogous to . . . Garreau." (Docket 34 ¶ 10). Defendant argues his case is different because "the vehicle was left off street in a parking lot in town surrounded by law enforcement officers for more than one and one-half hours." Id. (referencing Docket 31 at pp. 43-45). He contends "[t]here was no risk of the vehicle or its contents being tampered with by anyone other than law enforcement officers, as Blacksmith had been handcuffed and secured in the back of a patrol car." Id.

The R&R discussed the facts developed in Garreau. (Docket 30).

> [L]aw enforcement received a tip that [Mr. Garreau] was travelling from Eagle Butte, South Dakota, to Pierre, South Dakota, with a stolen firearm in his vehicle. . . . The tip described the vehicle. . . . Shortly thereafter, an officer observed the vehicle and pulled it over for a traffic violation. . . . After running defendant's driver's license,

15

the officer determined defendant had an active state warrant, arrested him, and placed him in the patrol car. . . . Because no one was available to pick up defendant's vehicle, the officer arranged for the car to be towed, conducted an inventory search pursuant to department policy, and discovered the stolen firearm hidden in the trunk. . . . Because the officer complied with policy by conducting the inventory search, the Eighth Circuit affirmed the district court's denial of defendant's motion to suppress the evidence.

(Docket 30 at p. 7) (internal citations omitted). The R&R found the facts in this case were analogous to Garreau.

> Officers Red Owl and Campbell lawfully took Mr. Blacksmith into custody based on his outstanding federal and tribal warrants. The vehicle was left in the parking lot of the Angel's store, which is a public location. No passengers were immediately available to remove the vehicle. . . . [L]aw enforcement complied with OSTDPS protocol by conducting an inventory search and towing the car to the department's impound lot. Because officers lawfully arrested Mr. Blacksmith and then complied with standard department protocol by inventorying and towing the vehicle, the search was reasonable.

(Docket 30 at p. 8).

It matters not that the vehicle was in the presence of law enforcement throughout the time period it took to complete the inventory search. What was important is that the inventory was conducted before the vehicle was released to a towing company. Mr. Blacksmith's argument fails because if the vehicle was left unattended in the parking lot, it would remain subject to the inventory search factors contemplated by Garreau and Opperman. The R&R's decision to compare Mr. Blacksmith's case with the facts of Garreau was appropriate. Defendant's tenth objection is overruled.

16

Mr. Blacksmith's eleventh objection to the R&R is the finding "that Officer Red Owl was credible and had probable cause to search the vehicle . . . ." (Docket 34 ¶ 11). He argues the officer could not be found credible "because he allegedly smelled the odor of alcohol when he went to turn off the ignition. . . . [And n]o alcohol was found in the vehicle except for an unopened beer can which would not create an odor of alcohol." Id.

"[O]nce a party makes a proper objection to a magistrate's finding, including a credibility finding, the district court *must* make a de novo determination of that finding." Taylor v. Farrier, 910 F.2d 518, 521 (8th Cir. 1990) (emphasis in original). "The court need not conduct a de novo hearing, . . . but must nonetheless make a de novo determination of that finding based on the record." Id. (referencing United States v. Raddatz, 447 U.S. 667, 673-76 (1980)). "The district court must consider the actual testimony and not merely review the magistrate's report and recommendations. . . . In conducting de novo review, the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989) (internal citation, quotation marks and brackets omitted).

As shown by the analysis above, the court completed a detailed review of the transcript of the suppression hearing. The court independently finds the testimony of Officer Red Owl credible. Merely because no open container was found in the vehicle does not diminish Officer Red Owl's testimony that he

17

smelled an odor of an alcoholic beverage while reaching into the vehicle to turn off the ignition.  There are many realistic scenarios in which an alcoholic beverage would have left an odor without the presence of an open container at the time of the stop.

The magistrate judge determined that because "the search was a lawful inventory search, it need not address the government's arguments that the search was a valid consent search or a valid automobile exception search." (Docket 30 at p. 8).  While the magistrate judge found Officer Red Owl credible, the R&R does not use that as a basis to evaluate probable cause or to determine whether the search was valid.  Defendant's eleventh objection is overruled.

The court finds the magistrate judge's report and recommendation is an appropriate application of the law to the facts developed at the suppression hearing.  The report and recommendation of the magistrate judge is adopted consistent with this order.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's objections (Docket 34) to the magistrate judge's report and recommendation are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 30) is adopted consistent with this order.

18

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 17) is denied.

IT IS FURTHER ORDERED that the physical evidence gathered during the stop, including but not limited to evidence gathered from Mr. Blacksmith's person and from the search of the automobile, is admissible at trial in the government's case-in-chief.

IT IS FURTHER ORDERED that a scheduling order will be entered.

Dated October 16, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE